E-FILED
Wednesday, 15 December 2004 03:15:24 PM
Clerk, U.S. District Court, ILCD

(1) US Mail to the address provided by the employee.

Paychecks will not be distributed to employees in the Plant.

A. The employees are required to enter their work hours, for payroll purposes, into an electronic time accounting system. It is the employee's responsibility to insure that their work time is entered correctly and on time. Errors due to incorrect or late data will be corrected on the following week's payroll.

The Company may, during the term of this agreement, begin to utilize an electronic notification system in conjunction with electronic deposit of payroll to inform employees of their payroll data.

# ARTICLE IX
# VACATION

## SECTION 9.10    ELIGIBILITY

**Section 9.11** Eligible employees are provided vacation with pay in the twelve (12) month period beginning on any October 1st and ending on the next September 30th in accordance with the following Employees:

| Who Have Completed Within Any Company Fiscal Year: | Are Eligible, Beginning That Year, for up to: |
|---|---|
| 1 year of Company service: | 1 rotation with 40 hours pay |
| 2 years of Company service: | 2 rotations with 80 hours pay |
| 3 years of Company service: | 3 rotations with 120 hours pay |
| 4 years of Company service: | 4 rotations with 160 hours pay |
| 5 years of Company service: | 5 rotations with 200 hours pay |

Employees hired prior to January 1, 1982, shall be eligible for additional vacation as follows:

| Who Have Completed Within Any Contract Years | Are Eligible, Beginning That Year for up to: |
|---|---|
| 20 years of Company service: | 5 rotations with 200 hours pay |
| 25 years of Company service: | 5 rotations with 240 hours pay |

**Section 9.12** For vacation purposes, a rotation is defined as an employee regularly works between scheduled rest days.

**Section 9.13** Employees with less than one year's service on any October 1 become eligible for vacation on the anniversary of their hire date.

**Section 9.14** On any October 1st, employees with more than one (1) year's service who have worked during the previous 12 months:

| At least 1100 hours: | eligible for all vacation |
| At least 520 hours, but less than 1100 hours: | eligible for 1/2 vacation |
| At least 260 hours, but less than 520 hours: | eligible for 1/4 of vacation |
| Less than 260 hours: | no vacation |

**Section 9.15** An employee of the Company on the last day of the Company calendar year will have, as of such date, a vested right to the vacation eligibility for the succeeding calendar year to which such employee is otherwise entitled in accordance with the provisions of this Article. Employees who leave the Company's employ for any reason, except as described in Section 9.17, prior to the end of the Company calendar year will not be entitled to vacation pay for the succeeding calendar year, irrespective of the number of hours worked.

**Section 9.16** Hours not worked because of the following will be counted in arriving at the total hours worked in Section 9.14:

1) Disability of less than one (1) year resulting from an occupational injury received while on duty for the Company
2) Funeral Leave
3) Jury Duty
4) Active duty with the Illinois National Guard or the reserve of any of the armed forces for less than six (6) months in the vacation year.
5) Taking an earned vacation.

6) Union business, which was requested and approved in advance.

**Section 9.17** Employees retiring under the Staley Retirement Plan will be paid upon retirement the share of vacation pay they would have been eligible for during the next vacation year. In the event of an employee's death, pay-in-lieu of the share of vacation pay the employee would have been eligible for during the next vacation year will be made to the surviving spouse or otherwise to the estate of the employee.

## SECTION 9.20    SCHEDULING

**Section 9.21** The employees in each area are responsible for managing the annual scheduling of vacations and any changes in the vacation schedule for that area. Such vacations must be scheduled in such a manner as to allow the remaining employees to perform the functions of the group efficiently. Annual sign up will be September 1 through September 15.

**Section 9.22** Vacations are normally taken on a rotation basis. Except for one (1) rotation, employees may schedule their vacation on a single or multiple day basis. Vacations scheduled for less than a rotation must be requested and approved by the Company by Tuesday of the preceding week. Emergency requests for single or multiple day vacations may be approved at the Company's discretion.

**Section 9.23** Employees returning from military leave of absence shall be allowed, in the fiscal year in which they return to work, vacation as though they had been working during their leave.

**Section 9.24** Employees off work due to long term sickness, injury, or jury duty during a scheduled vacation may select a later vacation period, pursuant to the provisions of Section 9.21.

**Section 9.25** Employees required to attend the funeral of an immediate family member as defined in Article VIII, Section 8.60 during their scheduled vacation will have the funeral period described

October 1, 2002                                                                  26

in that Section counted as funeral leave. Such employees will be allowed to later schedule a vacation period equal to the length of the funeral leave, pursuant to the provisions of Section 9.21.

## SECTION 9.30    VACATION PAY

**Section 9.31** Any general wage increase which becomes effective before or during an employee's vacation period shall be taken into account in computation of the employee's vacation pay.

**Section 9.32** Vacation pay will be included in the regular paycheck for the pay week in which the vacation rotation began.

**Section 9.33** Employees working a 12-hour shift schedule who take a rotation of their vacation on a single or multiple day basis pursuant to Section 9.22 will be paid twelve (12) hours pay each for the first and second day of vacation, and sixteen (16) hours pay for the third day of vacation.

## SECTION 9.40    CANCELLING SCHEDULED VACATIONS

**Section 9.41** The Company may cancel a scheduled vacation without prior notice when, in the Company's opinion, it is necessary to maintain efficient operation of the area with trained people. The Company will not cancel or reschedule all or any part of a scheduled vacation on less than 14 days' notice prior to the day the vacation is scheduled to begin for the purpose of avoiding overtime assignments without the agreement of the employee involved.

**Section 9.42** An employee may cancel a scheduled vacation, pursuant to Section 9.21.

**Section 9.43** Canceled vacation periods will be offered to other employees, pursuant to Section 9.21.

## SECTION 9.50    PAY IN LIEU OF VACATION

**Section 9.51** Pay in lieu of vacation will be allowed only for the following reasons:

October 1, 2002                                                                  27

1) Employees discharged, quits, dies, or retires.
2) Employee is laid off or on military leave during a scheduled vacation period.
3) Employee is unable to take a scheduled vacation due to injury or illness.
4) Employee has unused vacation at the end of the vacation year. In such instances, the employee will receive pay-in-lieu of vacation for vacation days provided for that year but not used.
5) Employees may request pay-in-lieu for all of their vacation with the exception of one (1) rotation at any time during the vacation year.

## ARTICLE X
## OPERATING RULES AND REGULATIONS

### SECTION 10.10    LEAVES OF ABSENCE

**Section 10.11** Employees may make written requests to the Company for leaves of absence without pay. Such requests will be considered by the Company on an individual basis, where, in the Company's opinion, the employee demonstrates a legitimate need for time off.

**Section 10.12** Employee requests for leaves of absence under the Family Medical Leave Act will be handled in accordance with the provisions of that Act.

**Section 10.13** Upon advance written request by the Union to the Company, an employee shall be granted an unpaid time off for the purpose of participating in Union business. Up to seven (7) employees shall be granted such an unpaid leave at any time.

An employee elected or selected by the International for a full time job will, upon written request, be given a leave of absence. The employee's seniority will accumulate during this leave, except for inclusion in benefit plans that require active employment with the Company. At the conclusion of such leave, the employee will return to the same area and same pay classification, if possible. The employee's seniority for purposes of bidding, vacation allotment and scheduling, and other contractual seniority rights will be the same as if the employee had not taken leave.

**Section 10.14** Employees who fail to return to work at the expiration of a leave of absence are considered to have resigned and left the employ of the Company.

**Section 10.15** Any employee called to active service by the Illinois National Guard or the reserve of any of the armed forces of the United States shall be granted leave of absence for the duration of the active service. Seniority shall continue to accumulate during such leave. This leave shall date from the day active service starts until the date of release from active service. The employee must return to work for the Company within forty-eight (48) hours after being released from active service, unless physically impossible to do so.

**Section 10.16** The Company will make up the difference in pay between the amount an employee actually earns during required annual training or emergency call-up in the National Guard or armed forces, and the amount that would have been earned at the regular hourly rate of pay for that employee (on a forty (40) hour per week basis) for up to two (2) weeks per calendar year, provided the employee returns to work within forty-eight (48) hours after release from such duty, unless physically impossible to do so.

**Section 10.17** The Company will continue the group life insurance of each employee called to active duty by the National Guard or armed forces for the duration of time the employee is on active service.

### SECTION 10.20    WORK OF SUPERVISORY AND SALARIED EMPLOYEES

**Section 10.21** Supervisory and salaried employees shall not be used to permanently replace bargaining unit employees. Therefore, these

employee shall not perform work that would deprive an active employee of the opportunity to work that individual's regularly scheduled work hours.

## SECTION 10.30  SAFETY

**Section 10.31** There shall be a Joint Health and Safety Committee (JHSC), consisting of three (3) representatives each from union and management, plus one (1) member from each Business Unit Health and Safety Committee (BUHSC) in the Plant. The JHSC shall hold meetings, at a regularly scheduled time and place, to review and make recommendations on health and safety conditions and practices in the Plant

**Section 10.32** Within each Business Unit, there shall be established one (1) Business Unit Health and Safety Committee (BUHSC), comprised of individuals working in that Business Unit, one (1) of whose members shall be a Steward in that Business Unit.

## SECTION 10.40  RETIREMENT PLAN

**Section 10.41** Employees covered by this Agreement shall be eligible to participate in the retirement plan negotiated between the Company and the Union as outlined in the plan.

## SECTION 10.50  INSURANCE

**Sections 10.51** Employees and their eligible dependents who enter the Staley Comprehensive Health Care Plan will be covered as outlined in the Plan. Any future changes to this Plan during the life of this Agreement will be applied automatically to bargaining unit employees and their eligible dependents who are enrolled in the Plan.

## SECTION 10.60  SAVINGS AND INVESTMENT PLAN

**Section 10.61** Employees who enter into the savings and investment plan negotiated between the Company and Union shall be covered as outlined in the plan.

October 1, 2002                                30

---

## ARTICLE XI
## WORK STOPPAGE

## SECTION 11.10  INTERFERENCE WITH NORMAL PLANT OPERATIONS

**Section 11.11** The Company and Union agree that it is in the best interest of all parties for the Decatur Plant to function normally. Both parties agree that any activity by employees, either individually or in groups, designed to interfere with the Plant's ability to function normally cannot be tolerated. Maximizing the quantity and quality of production, and resolving problems in the production process, is a fundamental part of each employee's job. Consequently, the parties agree that there shall be no work stoppages, strikes of any kind, boycotts, picketing, slow-downs, interference with production or other interference with the operation of the Decatur Plant during the life of this Agreement.

**Section 11.12** The parties also agree that there shall be no work stoppage or other interference with the operation of the Decatur Plant at any time by reason of any dispute or disagreement between either of the parties hereto and a third party, nor shall there be any work stoppages, strikes of any kind, boycotts, picketing, slow-downs, interference with production or other interference with the operation of the Decatur Plant by reason of any dispute or disagreement between persons, corporations, or unions not signatory to this Agreement.

## SECTION 11.20  NOTIFICATION

**Section 11.21** In the event of a strike or work stoppage, the Union agrees to give the Company four (4) days' notice before the beginning of such work stoppage.

October 1, 2002                                31

## ARTICLE XII
## SEPARABILITY

**Section 12.10** If any of the provisions of this Agreement shall be finally judicially declared to be illegal or contrary to public policy, such illegality shall not render the remainder of this Agreement illegal or ineffective, but the remainder of this Agreement shall continue in full force and effect until the expiration of the Agreement.

## ARTICLE XIII
## WAIVER OF PENALTIES

**Section 13.10** Neither party hereto shall be liable for the breach of any provisions of this Agreement caused by or the result of an act of God, civil commotion, fires, floods, legal acts of public authorities, riots, or other acts or conditions over which either of the parties has no control.

## ARTICLE XIV
## DURATION

### SECTION 14.10 LENGTH OF AGREEMENT

**Section 14.11** This Agreement shall be effective as of the day after it is executed by both parties and shall remain in full force and effect until 11:59 p.m. on September 30, **2005**. It shall automatically be renewed from year to year thereafter unless either party shall notify the other in writing that it desires to modify this Agreement or to terminate the same at least sixty (60) days prior to its expiration date, or any subsequent annual expiration date.

**Section 14.12** During the final six (6) months of this Agreement, collective bargaining negotiations shall commence ten (10) days after either party serves written notice of its desire to modify this Agreement upon the other.

October 1, 2002                                32

## ARTICLE XV
## COMPLETE AGREEMENT

### SECTION 15.10

This Agreement, including all its appendices, represents the entire agreement of the parties. All previous oral and written agreements and past practices, irrespective of their terms or conditions, are hereby canceled, except for agreements and practices extended my mutual agreement of the parties.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed this 28th day of October, 1999.

| FOR THE UNION: | FOR THE COMPANY |
|---|---|
| United Paper, Allied-Industrial, Chemical & Energy Workers International Union, and its Local Union No. 6-837 | A. E. Staley Manufacturing Company Decatur Plant |

[signatures]

October 1, 2002                                33

# APPENDIX 1

## SHIFT SCHEDULES

A. All employees on a rotating shift schedule shall be assigned to the following rotating shift schedule:

- Twelve (12) hours per shift
- A rotation schedule of consecutive periods of:

  Three (3) days working followed by three (3) days resting, rotating from days (6:00 AM to 6:00 PM) to nights (6:00 PM to 6:00 AM) after every five (5) rotations.

B. Employees on a day work schedule will be assigned to one of the following schedules:

1. Five (5) consecutive eight (8) hour days starting at a consistent starting time, followed by two (2) consecutive days off.
2. Three (3) consecutive twelve (12) hour days starting at a consistent starting time, followed by three (3) consecutive days off.

# APPENDIX 2

## DEFERRED TRAINING FOR HIGH SENIORITY EMPLOYEES

Current high seniority employees may, at the signing of this agreement, defer additional training. Employees may defer additional training on a second skill block as mandated in Section 6.42 if they have a combination of age and service that would, with normal continued service, reach a value of 85 points (crediting 1 point for each year of service and one point for each year of age) by September 30, 2004. They may take this deferment without a loss of pay grade.

This deferment will be in effect until September 30, 2006, and deferred employees will not be subject to the provisions of Sections 6.42 and 6.43 if they remain in their present area assignment, and maintain their present skill block qualifications. This deferment is

October 1, 2002                                    34

---

subject to the requirement that the area is able to complete normal scheduling of its operations.

# APPENDIX 3

## Decatur Plant Alcohol, Drug, and Controlled Substance Policy

### SECTION 1.    PURPOSE

An employee under the influence of a drug or alcohol on the job can be a serious safety risk to himself, other employees, and, in some instances, the general public. The possession, use, or sale of a drug or alcohol in the work place is unacceptable from the standpoint of safety, job performance, and efficient operations. The Company intends to maintain a safe working environment for its employees and protect Company property, equipment, and operations. Therefore, this Policy has been established with regard to use, possession, or sale of alcohol or drugs while at work or on Company property or on Company business. This Policy is based on the principle of reasonable cause to suspect.

### SECTION 2    EMPLOYEE ASSISTANCE PROGRAM

The Company encourages the use of the EAP. However, it is the responsibility of the employee to seek assistance from them before alcohol and drug problems lead to disciplinary action.

The employee's decision to seek prior assistance from the EAP will not be used as the basis for disciplinary action and will not be used against the employee in any disciplinary proceeding. However, using such services from EAP will not be a defense to avoid disciplinary action where facts proving a violation of this Policy are obtained outside of such assistance.

### SECTION 3    ALCOHOL

Possession, use, sale, purchase, or being under the influence of

October 1, 2002                                    35

alcohol employee while at work or on Company business is prohibited.

### SECTION 4.   ILLEGAL DRUGS

Possession, use, sale, purchase, or being under the influence of an illegal drug by an employee while at work or on Company business is prohibited.

### SECTION 5   POSSESSION OF ILLEGAL DRUGS OR ALCOHOL

The Company may conduct searches for illegal drugs or alcohol on Company property. Where there is reasonable cause to suspect drugs or alcohol are present, the Company search may include an employee's personal property including, but not limited to, the employee's automobile, clothing, lunch box, cooler, purse, and parcels. The employee is expected to cooperate in the conducting of this search.

### SECTION 6   LEGAL DRUGS

An employee's use of a legal drug can pose a significant risk to the employee or to others. The use of, or being under the influence of, any legally obtained drug while at work or on Company property or on Company business is prohibited if such use or influence negatively affects the ability of the employee to perform assigned job duties safely and/or effectively, or can pose a safety risk to co-workers or the general public. An employee who has reason to believe or has been informed that the use of a legal drug may negatively affect himself or others is to report such drug use to his/her supervisor to determine job-related consequences. If necessary, such employee may be required to take a leave of absence or comply with other appropriate remedies determined by management.

### SECTION 7   DRUG AND ALCOHOL TESTING

The Company may require a blood test, urinalysis, or other drug/alcohol testing of an employee whom the Company has reasonable

---

cause to suspect of using or being under the influence of a drug or alcohol while at work or on Company property or on Company business. This includes, but is not limited to, any employee who is involved in an accident or injury where the Company believes the employee's actions may be a contributing factor to the accident or injury.

The Company may rely on any of the following, among other things, in establishing reasonable cause to require an employee to submit to a drug or alcohol test:

1. Direct observation by a member of management of an employee's drug use or possession and/or observation of physical symptoms associated with being under the influence of a drug or alcohol.

2. A pattern of unusual, abnormal, or erratic conduct or behavior by an employee.

3. Arrest or conviction of an employee for a drug-related offense, or the identification of an employee as the focus of a criminal investigation into illegal drug possession, use, or trafficking.

4. Information provided to the Company either by sources considered by the Company to be reliable and credible or which is independently corroborated. In such situations, the Company will not be required to identify the source of the information.

If an alcohol test reveals that the employee's alcohol level is above the detection limit established for alcohol, the employee will automatically be deemed "under the influence" of alcohol within the meaning of this Policy. However, an employee whose test results are below the detection limit may also be deemed "under the influence" if the employee is unable to work in a safe and efficient manner.

If an employee's drug test reveals that the employee has illegal drugs in his/her system at or above the detection limit established for those

drugs, that test is confirmed by GC/MS confirmation at the established confirmatory test level for that drug, then these test results will automatically be considered conclusive evidence that the employee was "under the influence" of illegal drugs at the time of the test. If the concentration levels are below these thresholds, then the test is deemed to be negative.

## SECTION 8    DISCIPLINARY ACTION

An employee's refusal to consent to either a drug/alcohol search or a drug/alcohol test under the provision of this Policy may result in termination.

If an employee is required to leave work to take a drug/alcohol test, the employee will not be paid for time lost from scheduled work while waiting for test results, unless the test results are negative and the employee was physically able to return to work.

An employee found to be "under the influence" as described in this Policy will be immediately relieved from duty and referred to a professional counselor for assessment at the EAP. Failure of the employee to promptly enter treatment if recommended by the counselor and to successfully complete such treatment (including treatment on an ongoing basis) will result in termination of employment. The employee will be eligible for reinstatement subject to satisfactorily fulfilling his obligations under the treatment program, unless the employee has committed a violation of Company rules while "under the influence" that would otherwise subject the employee to disciplinary action. In such situations, the fact that the employee was "under the influence" at the time of the violation will not protect the employee from appropriate disciplinary action including termination. Should a counselor determine that treatment is unnecessary, then the employee will be subject to disciplinary action, including consideration for termination. If such employee is not terminated, the employee will be informed that a second such occurrence of being found to be "under the influence" will result in immediate termination.

Any employee found possessing, selling, or purchasing any illegal drugs or alcohol on Company property will be subject to termination without referral to EAP. An employee who has been referred to EAP for treatment and who subsequently is found to be "under the influence" as described in this Policy will be subject to immediate termination. Illegal drugs found on Company property will be confiscated by the Company and turned over to local law enforcement authorities.

## SECTION 9    DEFINITIONS FOR THE PURPOSE OF THIS POLICY

"Under the Influence" means that the employee is affected by a drug or alcohol or the combination of a drug or alcohol The symptoms of influence are not confined to those consistent with misbehavior, nor to obvious impairment of physical or mental ability such as slurred speech or difficulty in maintaining balance. A determination of influence can be established by a professional opinion, a scientifically valid test, and, in some cases such as alcohol, by a layperson's opinion.

"Legal Drug" means prescribed drugs and over-the-counter drugs which have been legally obtained and are used for the purpose for which they were prescribed or manufactured.

"Illegal Drug" means any drug (a) which is not legally obtainable or (b) which is legally obtainable but has not been legally obtained. The term includes prescribed drugs not legally obtained and legal drugs not being used for prescribed purposes. It also includes marijuana.

"Detection Limit" means the threshold level established by the National Institute of Drug Abuse (NIDA) that indicates the presence of a compound in the test sample. These levels are subject to change without prior notice as recognized NIDA testing levels change. Current testing levels will be provided to employees or the Union upon request.

# APPENDIX 4

## Vacation Addendum

In addition to the language outlined in Section 9.11 of this Agreement, it is further understood that there are two employees with hire dates prior to January 1, 1991, who have not yet attained their 15 years of employment but who will be granted their fourth (4th) week of vacation eligibility effective with the signing of this Agreement.

## 2003

```
JANUARY                FEBRUARY               MARCH
S  M  T  W  T  F  S    S  M  T  W  T  F  S    S  M  T  W  T  F  S
         1  2  3  4                       1                      1
5  6  7  8  9 10 11    2  3  4  5  6  7  8    2  3  4  5  6  7  8
12 13 14 15 16 17 18   9 10 11 12 13 14 15    9 10 11 12 13 14 15
19 20 21 22 23 24 25  16 17 18 19 20 21 22   16 17 18 19 20 21 22
26 27 28 29 30 31     23 24 25 26 27 28      23 24 25 26 27 28 29
                                             30 31

APRIL                  MAY                    JUNE
S  M  T  W  T  F  S    S  M  T  W  T  F  S    S  M  T  W  T  F  S
      1  2  3  4  5                1  2  3    1  2  3  4  5  6  7
6  7  8  9 10 11 12    4  5  6  7  8  9 10    8  9 10 11 12 13 14
13 14 15 16 17 18 19  11 12 13 14 15 16 17   15 16 17 18 19 20 21
20 21 22 23 24 25 26  18 19 20 21 22 23 24   22 23 24 25 26 27 28
27 28 29 30           25 26 27 28 29 30 31   29 30

JULY                   AUGUST                 SEPTEMBER
S  M  T  W  T  F  S    S  M  T  W  T  F  S    S  M  T  W  T  F  S
      1  2  3  4  5                   1  2       1  2  3  4  5  6
6  7  8  9 10 11 12    3  4  5  6  7  8  9    7  8  9 10 11 12 13
13 14 15 16 17 18 19  10 11 12 13 14 15 16   14 15 16 17 18 19 20
20 21 22 23 24 25 26  17 18 19 20 21 22 23   21 22 23 24 25 26 27
27 28 29 30 31        24 25 26 27 28 29 30   28 29 30
                      31

OCTOBER                NOVEMBER               DECEMBER
S  M  T  W  T  F  S    S  M  T  W  T  F  S    S  M  T  W  T  F  S
         1  2  3  4                       1       1  2  3  4  5  6
5  6  7  8  9 10 11    2  3  4  5  6  7  8    7  8  9 10 11 12 13
12 13 14 15 16 17 18   9 10 11 12 13 14 15   14 15 16 17 18 19 20
19 20 21 22 23 24 25  16 17 18 19 20 21 22   21 22 23 24 25 26 27
26 27 28 29 30 31     23 24 25 26 27 28 29   28 29 30 31
                      30
```

October 1, 2002    40

October 1, 2002    41

2004 Calendar (January–December)

2005 Calendar (January–December)

Joann D.


Bratcher 5

# TATE & LYLE NORTH AMERICA

## APPLICATION FOR FAMILY OR MEDICAL LEAVE

Name: Sonya Bratcher

Address: 545 W. Main St. #7

Tate & Lyle policy requires employees, to the extent possible, to provide the company with 30 days advance notice of their need to take leave. Failure to make such request 30 days in advance of the start date may, without a legitimate reason why the employee cannot provide such notice, postpone the start of the leave.

Anticipated Start Date of Leave: 11/12/00

Expected Date of Return from Leave: 11/30/00

Reason For Leave (check appropriate box):
- [x] A serious health condition affecting me.
- [ ] A serious health condition affecting my spouse, son, daughter or parent.
- [ ] The birth of my child, adoption of a child, or foster care placement of a child with me.

*Notice:* Employees requesting leave for their own serious health condition or for the serious health condition of the employee's spouse, child or parent must submit a verifying medical certification from a physician within 15 days of application for leave.

I hereby authorize the health care provider(s) involved to provide company representatives with information in order to verify my need and reason for this family and medical leave. I understand that my failure to return to work at the end of my leave period may be treated as a resignation, unless an extension has been agreed upon and approved by the company, or if I continue on a paid leave plan recognized by Tate & Lyle.

Signature of Employee: Sonya Bratcher

Date Request Submitted: 11/14/00

Received By: Joann Daugherty

Date: 11/15/00



EXHIBIT

Bratcher 7

DATE: 10-22-01
TO: Sonya Bratcher
FROM: Rae Stone
RE:

## NOTIFICATION OF POSSIBLE FAMILY and MEDICAL LEAVE ELIGIBILITY

On 10/22/01 you informed the Company of a situation that may qualify you for family and medical leave under the Family and Medical Leave Act of 1993 (FMLA). The FMLA provides eligible employees with a total of 12 weeks of leave during any rolling 12-month period. During those 12 weeks, the company is obligated to maintain your health benefits. We also must ensure that if you return during that time, and are released to perform the functions of your job, that you are reinstated to the same or equivalent job with the same pay, benefits and other terms of employment.

This letter is to inform you that we are preliminarily designating the time away (and any future time away for the same reason) as being covered under the FMLA. This designation is being made pending your return of the enclosed Application for Family and Medical Leave (to be completed by you) and Medical Certification Statement (to be completed by the attending physician for this circumstance). These forms must be returned to me within 15 days of the date of this letter. If you fail to return these forms in a timely manner, it may result in the FMLA designation being revoked, and the time away from work being designated as "absent" without benefit of the protections of the FMLA. Once the forms have been received, we will review the provided information and provide you with notification as to whether your leave will continue to be designated as FMLA leave, and whether the time away will be counted against your 12 week allotment.

You should also be aware of the following things regarding FMLA leave:
- The Company requires that any accrued paid leave (*e.g.*, vacation) be utilized for periods of FMLA leave that would otherwise be unpaid when the leave is for any reason other than your own serious health condition.
- Periodic medical certification is required in order to continue eligibility under FMLA. The company may require certification of the serious health condition necessitating FMLA leave every 30 days.
- If you should convert to the unpaid FMLA leave, you will be required to pay your portion of insurance premiums during the unpaid leave in order to maintain coverage. You will have a 30-day grace period within which to make these payments. If, after providing a 15-day notice of the fact that your coverage will lapse, you do not make the required payment, you will cease to have medical coverage. This coverage may be restored, provided you return before the expiration of FMLA leave. This provision applies primarily to situations where leave is continuous, but you still should be aware of this provision.
- If this absence is for your own serious health condition, you may be required to present a fitness-for-duty certificate prior to returning to work if the absence is for more than 5 consecutive work days.
- Failure to return to work following period(s) of continuous unpaid leave may require you to reimburse TLNA for your health care coverage (the COBRA cost of continuation) for the period you were on continuous leave.

If the leave being requested is approved and is for intermittent leave, you must identify the need for leave as being for the FMLA approved reason at the time the leave is needed.

## TATE & LYLE NORTH AMERICA

### REQUEST FOR BENEFITS UNDER:
### HEALTH & ACCIDENT BENEFIT PLAN or
### SHORT-TERM SALARY CONTINUANCE PLAN


EXHIBIT
Bratcher

NAME: Sonya Bratcher                        SS#: 350·68·0417

LOCATION/
BUSINESS UNIT: REF                          TEAM: A

I request Health & Accident or Salary Continuance benefits (whichever is applicable) for absences due to non-occupational injury or illness. I have been off work since 10·16·01 and anticipate returning to work by 12·3·01. I understand and agree to contact Human Resources in Decatur prior to my return to work to terminate this benefits claim, and also understand that a medical release is required at the time of my return. I also understand and agree to keep my supervisor up to date as to the status of my inability to work. A new statement must be submitted not less than every 30 days in order to continue benefits. I hereby authorize the release of any medical information necessary to process this request.

Employee's Signature: Sonya Bratcher        Date: 11·16·01

### PHYSICIAN'S STATEMENT

Name of physician: Marshall F. Brustein, M.D.

Address: 102 West Kenwood, Suite 130 Decatur IL 62526

Telephone Number: 217-875-8100              Fax Number: 217-875-31 / 872-4897

Employee has been off work since: 10/15/01   Was employee hospitalized overnight? YES (NO)

Date first seen for this condition: 10/22/01  Date last seen for condition: 10/26/01 - 11/19/01

Is the affliction the result of an accident? (Describe below under Medical Facts): YES (NO)

Based on the patient's condition, has he/she been capable of working since:

1. First reporting off work?                YES (NO)
2. The date last seen for the condition?    YES (NO)

Date released to return to work (or is expected to return): possibly 12-3-01 error by

Medical facts regarding the condition, including diagnosis: patient has bilateral hand pain + swelling she is in intensive physical therapy 3 times a week

Is the employee unable to perform work of any kind? (YES) NO  — HURTS TO USE HANDS

TLNA H&A/SC Form                                           Page 1 of 2

If able to perform some work, is the employee unable to perform one or more essential functions of the employee's job?   YES   (NO)
If yes, explanation of extent to which employee is unable to perform the functions of his or her job:

_____

_____

If the employee's condition does not limit his/her ability to perform work, is it necessary for the employee to be absent from work for treatment?   (YES)   NO

If the condition is a chronic condition or pregnancy, state whether the employee is presently incapacitated and the likely duration on frequency of the episodes of incapacity:

_____

If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments: _____unknown_____

If a regimen of continuing treatment is required under your supervision, provide a general description of such regimen (e.g.; prescription drugs, therapy, etc.)
she is currently in therapy 3 times a week + taking medication

If treatments are to be provided on an intermittent or part-time basis, provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment (if known), and period required for recovery (if any):

_____

If another provider of health services (e.g.; physical therapist) will provide any of these treatments, please state the nature of the treatments: _____

_____

Signature of Physician (and Degree): _____[signature]_____

Date: 4/20/01

---

| Return original to: | TATE & LYLE NORTH AMERICA<br>Attn: Carol Mattingly, Employee Benefits<br>2200 E. Eldorado<br>Decatur, IL 62521           FAX: (217) 421-3114 |
| --- | --- |

TLNA H&A/SC Form

Page 2 of 2